796 P.2d 1101

**In the Matter of Philip W. STEERE, Esq., An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 19337.**

Supreme Court of New Mexico.

Aug. 29, 1990.

Charles A. Wyman, Deputy Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Philip W. Steere, Las Cruces, pro se.

## OPINION

**PER CURIAM.**

This matter is before the court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 through 17–316 (Repl. Pamp.1988 & Cum.Supp.1990), wherein attorney Philip W. Steere was found to have committed various violations of the Rules of Professional Conduct, SCRA 1986, 16–101 through 16–805 (Repl.Pamp.1988 & Cum.Supp.1990). While we adopt most of the Disciplinary Board's findings of fact and conclusions of law, we shall defer part of our ruling on the sanctions recommended by the Board pending further proceedings.

The disciplinary charges in this matter arose out of Steere's representation of Mr. Glenn Thornton, who was a client of the public defender's office in Alamogordo, New Mexico. That office was appointed by the district court in April 1988 at Thornton's arraignment on three felony counts of fraud, one misdemeanor count of fraud, and one felony count of larceny.

Prior to the court's appointment of a public defender, Thornton had been represented by private counsel, Michael F. McCormick, who thereafter became an assistant district attorney for the Twelfth Judicial District. A special prosecutor was appointed to pursue the charges against Thornton because of McCormick's association with the district attorney's office and his prior representation of Thornton.

Due to subsequent resignations of the two other public defenders in the Alamogordo office, Steere assumed the representation of Thornton around August 1, 1988. A jury trial had been set for August 29, 1988. A few days after he became aware of the trial setting, Steere went with his investigator to talk to several of the complaining witnesses. He learned that some of those witnesses were willing to execute an affidavit of non-prosecution in exchange for various kinds of restitution.

In one felony count of the indictment against Thornton, he was alleged to have defrauded Mr. and Mrs. Rivers of $300.00

that had been credited to him on an open account at their store. Steere and his investigator met with the complainants who demanded restitution in the amount of $4,000.00. Steere negotiated that amount to $969.00, which purportedly represented the original loss of $300.00 plus $300.00 for one year's interest, lost wages and expenses incurred as a result of the Rivers' travel to Alamogordo for three previous court proceedings, and miscellaneous other costs.

With regard to another felony count of fraud and one felony count of larceny, a complainant named McKinley agreed to accept $1,000.00 and $266.00 respectively, which were the approximate values of the property taken from him. Both the Rivers and McKinley subsequently signed affidavits of non-prosecution in exchange for payments of the aforementioned amounts.

Steere asked another complaining witness named Melton "how much [cash] would it take?" but Melton refused to sign an affidavit of nonprosecution and was paid nothing for restitution in connection with another felony count.

Prior to trial, the signed affidavits were filed with the district court. Except for the name of the affiant, each followed the same form:

> "I _____, wish to state that I am the victim and complaining witness in this case, and that I believe the best interest of all parties would be served if the above-named Defendant were not prosecuted. I do not wish to press charges against this individual nor appear in Court to testify against him. I further request that all charges be dropped and that the investigation be terminated. I sign this Affidavit freely and voluntarily."

These affidavits were obtained with the knowledge of the special prosecutor. The complaining witnesses asked him if it was all right to accept restitution, and the prosecutor's advice was to "follow [your] conscience."

Apparently it is common practice to obtain such affidavits in the Twelfth Judicial District, particularly in connection with the prosecution of worthless check cases. Where restitution payment has been made in exchange, the prosecutor may consider a plea to a lesser charge or outright dismissal.

We believe this practice poses significant dangers to the fair and orderly administration of justice. Certainly it is the policy in this state to seek restitution from convicted persons on behalf of their victims. *See* NMSA 1978, § 31–17–1 (Repl.Pamp.1990). Nevertheless, when a witness in a criminal case has been offered money in exchange for a sworn statement, there arises the appearance that certain testimony has been purchased, at least to the extent that any part of such affidavit may become a part of the public record or used as impeaching evidence at a subsequent hearing or trial. Although the money offered may be characterized as restitution, where the amount becomes privately negotiable rather than determined under the court's supervision, it may appear that a defendant has bought the favor of an adverse witness who would otherwise have cause to resent defense counsel's approach. Moreover, while the prosecutor is not bound by the wishes of a witness not to appear and testify as stated in such an affidavit, the message to the prosecutor is that he or she may have more difficulty securing or dealing with a necessary witness whose interest in the pursuit of justice may have been diminished by the recoupment of private damages.

■■■ We strongly disapprove of the practice by any officers of the court or their agents that involves the payment of money to an alleged victim in exchange for that person's execution of any sworn statement. *See In re Ayala*, 102 N.M. 214, 693 P.2d 580 (1984) (attorney engaged in conduct adversely reflecting on his fitness to practice law by offering compensation to witnesses contingent upon content of witness' testimony). While we affirm the public policy of restitution to crime victims and find nothing *per se* improper about an affidavit of non-prosecution, it was the combination of these two elements on a *quid pro quo* basis in this case that we believe constituted conduct prejudicial to the adminis-

tration of justice in violation of Rule 16–804(D), and which adversely reflected on Steere's fitness to practice law in violation of 16–804(H).[1]

On the morning of Thornton's scheduled trial, the special prosecutor offered a plea bargain that was accepted and presented to the court. The plea agreement was approved, a presentence report was ordered, and Thornton's release on bond was continued to the December 1988 sentencing hearing.

In October 1988, Thornton showed Steere documents indicating that Thornton had received an insurance settlement of $175,000.00. On November 1, 1988, McCormick re-entered the case as Thornton's privately-retained counsel, having resigned from the district attorney's office.

Steere continued to represent Thornton as co-counsel, and, in mid-November, he and McCormick met with the district attorney, Bert Atkins, to discuss replacing the special prosecutor and amending the plea agreement. Prior to that meeting, Thornton gave McCormick $10,000.00 in cash to show to Atkins. When Atkins was shown this money, he became concerned that he was being "set up;" nevertheless, he continued the meeting. Defense counsel suggested that Atkins join with them in moving the court to set aside the plea agreement and permit a misdemeanor plea. It also was suggested that the cash could be used to pay substantial fines and court costs, including the fees of the special prosecutor, and to make a substantial contribution to Crime Stoppers or some charitable organization. Mr. Atkins declined to involve himself in these proposals, and no transaction was consummated.

Some time after this meeting, but prior to sentencing, Steere agreed to meet with Thornton at his client's home. While there, Steere told Thornton that there was "absolutely no problem" in taking $50,000.00 to the special prosecutor to have him "throw [the charges] in the garbage" and that he still believed Atkins would "take $15,000.00 cash to dismiss them." The hearing committee in this matter found, however, that "* * * it was not proved by a preponderance that these statements were intended to be taken as a representation of an ability to bribe a public official."[2]

Notwithstanding the latter finding, the hearing committee also expressed its unanimous belief that Steere's testimony before them concerning the aforementioned conversation with his client exhibited a "reckless disregard for the truth" and that his testimony was intended to mislead the committee. Based on that testimony and the committee's comments thereon, the Disciplinary Board concluded that, in addition to his violation of Rules 16–804(D) and (H) while representing Thornton, Steere had engaged in conduct before the committee involving deceit and misrepresentations contrary to Rule 16–804(C). The Board consequently enhanced the committee's recommendation of a formal reprimand to an indefinite suspension for a period of no less than two years with certain terms and conditions of reinstatement.

We believe the following ruling, however, is more appropriate. On the one hand, a formal reprimand is not sufficient to express the court's disapproval of the kind of conduct towards witnesses that Steere exhibited in his representation of Thornton. The repercussions of such conduct invite disregard of a citizen's duties as a witness, disrespect of the judicial system, and disrepute for officers of the court.

---

**1.** *Compare* Rule 16–304(B), which prohibits a lawyer from offering an inducement to a witness prohibited by law. NMSA 1978, Section 31–17–1 (Repl.Pamp.1990), does not limit the payment of restitution exclusively to post conviction proceedings. In addition, the statutes provide for the payment of expert witness fees, as well as reimbursement of *per diem* and mileage expenses for both expert and ordinary witnesses. *See* NMSA 1978, § 38–6–4 (Repl.Pamp. 1987).

**2.** *Compare* Rule 16–804(F), which prohibits a lawyer from stating or implying an ability to influence improperly a public official. We believe that in order to promote public respect for the integrity of our system of criminal justice, this rule should be construed literally and strictly observed.

Steere's conduct while representing his client warrants public censure.

On the other hand, with regard to Steere's alleged misconduct during his testimony before the hearing committee, we believe procedural due process requires that he be given notice and an opportunity to be heard with respect to whether he intended to violate Rule 16–804(C). Consequently, we will defer ruling on any further sanctions in that regard and remand for further proceedings in accordance with the formal charging procedures provided by the Rules Governing Discipline.

It is ordered that Philip W. Steere be and hereby is publicly censured for conduct that was prejudicial to the administration of justice, and which adversely reflected on his fitness to practice law.

It is further ordered that this public censure shall be published in the *New Mexico Reports* and the *Bar Bulletin* and shall be filed in the office of the clerk of the supreme court pursuant to Rule 17–206(D).

It is further ordered that this matter shall be remanded, along with the records and exhibits heretofore submitted, to the hearing committee for further proceedings consistent with this opinion.

Costs in the amount of $6,373.17 are assessed against Philip W. Steere and shall be paid on or before December 1, 1990.

IT IS SO ORDERED.